```
1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF GEORGIA
2                        ATLANTA DIVISION

3    UNITED STATES OF AMERICA,        :
                                      :
4    vs.                              :  DOCKET NUMBER
                                      :  1:15-CR-0109-3
5    RYAN VINCENT HILL,               :
                                      :  ATLANTA, GEORGIA
6              DEFENDANT.             :  MAY 26, 2017

7


8              TRANSCRIPT OF RESENTENCING PROCEEDINGS

9             BEFORE THE HONORABLE AMY TOTENBERG

10                UNITED STATES DISTRICT JUDGE

11


12


13   APPEARANCES OF COUNSEL:

14        FOR THE GOVERNMENT:

15        JOHN S. GHOSE
          UNITED STATES ATTORNEY'S OFFICE
16

17        FOR THE DEFENDANT:

18        ALBERT L. NORTON, JR.
          NORTON & ASSOCIATES, P.C.
19


20


21


22     MECHANICAL STENOGRAPHY OF PROCEEDINGS AND COMPUTER-AIDED
                   TRANSCRIPT PRODUCED BY:
23
     OFFICIAL COURT REPORTER:         SHANNON R. WELCH, RMR, CRR
24                                    2394 UNITED STATES COURTHOUSE
                                      75 TED TURNER DRIVE, SOUTHWEST
25                                    ATLANTA, GEORGIA  30303
                                      (404) 215-1383
```

```
 1              P R O C E E D I N G S
 2    (Atlanta, Fulton County, Georgia; May 26, 2017.)
 3              THE COURT:  Good afternoon.  Please have a seat.
 4    Good afternoon, Mr. Hill.
 5              THE DEFENDANT:  Good afternoon, Your Honor.
 6              THE COURT:  Good afternoon, Counsel.
 7              MR. NORTON:  Good afternoon.
 8              MR. GHOSE:  Good afternoon, Your Honor.
 9              THE COURT:  We're here for the resentencing on
10    Mr. Hill's case.  This is the *United States of America vs. Ryan*
11    *Vincent Hill,* Case Number 15-CR-0109-3.
12              Counsel, would you go ahead and announce your
13    presence.
14              MR. GHOSE:  Good afternoon, Your Honor.  John Ghose
15    for the United States.
16              MR. NORTON:  Albert Norton for Mr. Hill.
17              THE COURT:  Okay.  All right.  When we last had a
18    phone conference and an in-person conference about this matter,
19    it was pursuant to the request of Mr. Hill's counsel who filed
20    a post hearing supplement to the sentencing memorandum that is
21    at Document 400 that I took under advisement and agreed based
22    on his submission as well as Mr. Ghose's submission that in
23    order to properly determine the issue in the judgment of
24    whether the sentence was to run concurrently, consecutively, or
25    in part concurrently and in part consecutively that I needed
```

1    myself to consider all the 3553(a) factors and that I wasn't

2    bound legally by the determination that had been made by the

3    federal court in South Dakota in the preceding matter, which

4    was their CR1440140.

5           The Government -- counsel for both parties agreed

6    that I hadn't reached that issue and that it was appropriate

7    for me to vacate the judgment that I had issued on the 10th day

8    of May.  And everyone will remember that we had some colloquy

9    during that sentencing about the question of how to treat the

10   order in the preceding matter requiring the decision that the

11   judgments be consecutive.

12          So I looked at this again.  And the sole issue in

13   front of me really is that dealing with whether any portion of

14   the sentence should run concurrently or not with the order and

15   judgment in the South Dakota case.  And that is the only issue

16   that I'm dealing with at this hearing.  And that was the

17   understanding of the parties.

18          Is there anything wrong with that summary that anyone

19   objects to in terms of the description of the posture of the

20   case?

21          MR. NORTON:  That sounds correct, Your Honor.

22          MR. GHOSE:  No, Your Honor.

23          THE COURT:  All right.  So taking that into mind,

24   Mr. Ghose, do you want to address first the Government's

25   position and the reasons for that position?

1          MR. GHOSE:  Yes, Your Honor.  I'm going to stay here.

2          THE COURT:  That's fine, as long as we can hear you.

3          MR. GHOSE:  Our position is still that the sentence

4    in this case -- well, first, let me just say that I think all

5    the parties are in agreement that the J&C -- the judgment and

6    commitment order out of the District Court in South Dakota was

7    improper to the extent that it made prospectively that sentence

8    consecutive to this forthcoming sentence.

9          So I think Mr. Norton is correct as per we discussed

10   during the phone conference the judgment and commitment order

11   in the District of South Dakota should be deemed to run at the

12   time that it was imposed.  So that sentence should be

13   considered from this point of view and from this Court as that

14   it is currently running.

15         THE COURT:  All right.

16         MR. GHOSE:  Okay.  That is how I interpret that based

17   on the cases that we referenced.  And just to make a record,

18   the case that we were discussing on the phone conference was

19   out of the First Circuit.  It is *United States vs.*

20   *Almonte-Reyes,* 814 F.3d 24.  And that was based off of its

21   interpretation of the Supreme Court case called *Setser*, which

22   is referenced in that First Circuit opinion.

23         I did research this as far as the Eleventh Circuit.

24   The Eleventh Circuit doesn't seem to have addressed the issue

25   that the First Circuit addressed last year in 2016 in the

 1   *Almonte-Reyes* case.  So I think it is fair to say that that J&C

 2   in South Dakota was invalid to the extent it made it

 3   consecutive.  And the reason for that is that if it were to be

 4   consecutive, it would be essentially forcing this Court to make

 5   its sentence consecutive.

 6         That being said though, I do think that this Court

 7   should decide and put in the new judgment and commitment order

 8   that at least some portion of this sentence on the bank robbery

 9   case should be run consecutive to the South Dakota sentence.

10   And the reason for that is the same as the reason we stated

11   before, which is if they are to be entirely concurrent then the

12   punishment for the bank fraud in South Dakota is essentially

13   erased, meaning that all that Mr. Hill has to do is pay

14   restitution and pay a special assessment.

15         And, obviously, criminal law is concerned more with

16   not just with getting money back but also with having some kind

17   of criminal punishment.  So our position is that some portion

18   of this sentence here should be consecutive to the sentence in

19   South Dakota.

20         I think Mr. Norton will probably ask for it to be

21   entirely concurrent.  And I would object to that for the

22   reasons that I just said.

23         I do think it is worth exploring today whether or not

24   maybe some portion of the sentence here should be run

25   concurrently with that sentence just because a 205-month

```
 1    sentence in this case consecutively combined with the 57-month
 2    sentence in the South Dakota case -- those two sentences were
 3    imposed sort of in a silo without considering them together.
 4           And I do think the statute requires this Court to
 5    consider the sentences together and consider whether a total
 6    sentence across both cases of 263 months total might be too
 7    harsh.
 8           I don't have a number specifically.  I wanted to hear
 9    what Mr. Norton was going to propose, and then I could respond.
10           THE COURT:  The sentence there in South Dakota was
11    62?
12           MR. GHOSE:  It was 57 months.
13           THE COURT:  57.  Excuse me.  Making it 262.  All
14    right.
15           MR. GHOSE:  Right.  And I was trying to get ahold of
16    the PSR in that case, and the prosecutor would not give it to
17    me.
18           THE COURT:  I'm just -- this is one of the issues,
19    that we have an incomplete view of the case.  I read everything
20    that was on file myself.
21           MR. GHOSE:  Yeah.  So did I.  But unfortunately --
22    and I got the factual basis here.  I have it for the Court if
23    the Court wants to review it.
24           THE COURT:  I read that as well.  And I read the
25    transcript.  And I read whatever I could.
```

1    MR. GHOSE:  My understanding -- and this hasn't been

2  verified.  But my understanding from conversations with the

3  prosecutor and also from conversing with Mr. Norton and also

4  the defendant just now is that he did get a high end sentence

5  in South Dakota and he did get a leader/organizer enhancement

6  in South Dakota.

7    That sounds right to me based on my view of the loss

8  amount and the guideline range for bank fraud.  But I can't --

9  I haven't verified that.  Mr. Shields did get 30 months.  He

10  was not a leader/organizer.  So that gives you some -- a little

11  bit of a benchmark.  And the factual basis is clear that

12  Mr. Hill agreed to in South Dakota that he was, in fact, a

13  leader.  I mean, you can see from the facts that he was

14  organizing and leading.

15    THE COURT:  All right.  Thank you.  We will give you

16  the opportunity once Mr. Norton has addressed this.

17    MR. NORTON:  Your Honor, on behalf of Mr. Hill, I

18  agree with that part of Mr. Ghose's discussion about the fact

19  that the South Dakota judgment has to be considered to be

20  running now.  I have read the cases he cited.  But I had also

21  done a lot of background research before I filed my

22  supplemental on May 9, which indicated that, yes, that is how

23  you have to look at that situation.

24    I do want to say something though about the verbiage

25  that is in the judgment about how this Court -- we're in

1  agreement that this Court is not bound to make its judgment

2  consecutive.  So I'm not arguing further on that.  I think that

3  Mr. Ghose is in agreement, and the Court seems to have

4  indicated that the -- this is a correct way to look at how the

5  later court -- this Court does its sentencing.

6          However, I am -- I do want to address head on the

7  fact that the South Dakota judge did say something in there

8  about her order needs to be run consecutive with whatever this

9  Court does.  Because you can look at that and say, well, that

10 is some indication of what was in the mind of that judge if it

11 is nothing else.  So therefore I ought to take that into

12 account.  And maybe that makes me lean towards consecutive or

13 most consecutive.

14          I would submit that that is a mistake because -- not

15 only because the factor that Mr. Ghose pointed out, which is

16 exactly correct, which is that that judge doesn't dictate to

17 this judge what the sentence would be.  But more than that, it

18 is kind of flawed reasoning from the beginning.

19          I don't know the reasons why that judge made that

20 statement.  But the reason it is flawed from the beginning is

21 because she would have no way of knowing what this Court has in

22 mind as a proper sentence for Mr. Hill.  So therefore why would

23 anyone say something like that in that circumstance?  It just

24 does not make any sense to me.

25          And, in fact, I think the last time we were here I

1  mentioned that for all she knows you're going to hit him with a

2  sentence that the South Dakota judge thinks is too harsh.  She

3  just doesn't know.  And so therefore I would urge the Court to

4  not give an element of deference to the fact that the judge had

5  that verbiage in her judgment.  So I wanted to say that first.

6          Mr. Ghose -- second, Mr. Ghose remarks that, well, if

7  you run it all concurrent, then it is like you have erased what

8  happens there.  That is not true.  And here is why we know it

9  is not true.  Because the statute I cited -- I think it was

10  3584(a) or whatever was the statute that I cited -- we have all

11  looked at it now.

12          THE COURT:  Right.

13          MR. NORTON:  It makes it clear -- in fact, it backs

14  up the reasoning I'm making right now, which is that the

15  earlier judge couldn't possibly know what is going to happen

16  later.  So therefore the earlier judge can't be looking at the

17  totality.  Only the later judge can be looking at the totality,

18  and that is this Court.

19          So for that reason, in looking at the totality of it,

20  that is the opposite reasoning of that suggested by Mr. Ghose.

21  Mr. Ghose is saying, well, it is like erasing what happened in

22  South Dakota and there is no punishment there.  That is not so

23  at all.  The law as I contend such as 3584 and the cases we've

24  cited -- the principle underlying those is that this Court is

25  to consider the totality of it.  It doesn't erase it.  That is

1    what it means.

2         The third thing I would say is as the case law that

3    we've looked at in the last couple of weeks makes clear in

4    looking at the totality of it what does that mean.  Well, it is

5    very explicitly in the law that looking at the two situations

6    and the totality means looking at the 3553(a) factors with a

7    view to -- not only the sentence that this Court is considering

8    but the prior as well.  Looking at them in total and seeing

9    what that does to this individual considering the 3553(a)

10   factors.

11        Now, given our agreement about what the limited scope

12   of issues is in this hearing, I'm not going to -- I'm not going

13   to presume to reargue those.  But I am going to say that the

14   Court determined that those totaled 205 months.  That is 17

15   years.

16        So if you add the South Dakota sentence with no

17   concurrent treatment at all, that is another 57 months.  That

18   is 262 months.  That is a total of 22 years.  So let's look at

19   this in the totality of it.  Mr. Hill is 28 years old.  This

20   will put him getting out of prison at age 50, well into middle

21   age, when his son is going to be 30 and his daughter who is 2

22   is going to be -- or 3 --

23        THE DEFENDANT:  3.

24        MR. NORTON:  -- is going to be 25.  So the specifics

25   of those two things combined is going to take -- I mean, this

1   is not a nice way to say this -- the apple of his life.  It is

2   going to take away the middle part of his adult life for 22

3   years.

4            So the question for this Court is is that appropriate

5   given the things that this Court is considering.  Well, what

6   this Court is considering is the bank robbery in which the two

7   other people were carrying guns and Mr. Hill wasn't.  One bank

8   robbery.  I don't mean to downplay what a bank robbery is.  But

9   I would -- I suggest to the Judge that this overstates

10  anybody's participation in the bank robbery.

11           And then the other thing which the Court has to

12  consider is, all right, well, what else has he got?  57 months

13  completely on top of 205.  What is that for?  Ultimately that

14  is for stealing checks and cashing them where they are

15  victimizing a bank again, but they are not running in and doing

16  it in a violent way.  They are basically stealing checks, going

17  in, and pretending to be somebody they are not, and cashing the

18  checks when they don't have a right to the proceeds from the

19  checks and getting the money from the bank that way.  That is

20  what they were doing out there.

21           And 57 months for that on top of 205 months --

22  Mr. Hill has no prior history.  He has never been to prison

23  before.  So he is going along.  He is at age 28.  All of a

24  sudden, he is going to be put away until he is 50 years old on

25  the basis of these two sentences combined if they are run

1    concurrent.

2          I would reiterate that for all we know if the South

3    Dakota judge were sitting here today she might very well say,

4    no, no, no.  That's too much.  When I said consecutive, I had

5    no idea that this is how it was going to play out.  We don't

6    know.

7          I have considered and talked with Mr. Hill about this

8    specifically that, you know, when you come in here for

9    sentencing in this set of circumstances what is the worst thing

10   running against you.  And since the Court remarked upon it last

11   time we were here, I will go ahead and speak to it head on.

12   And that is that the worst thing is that once he was on release

13   he sort of doubled down and made this huge error.  Instead of

14   turning away from criminal conduct, he sort of upped the ante

15   and went in and did this bank robbery.

16          So we are very conscious of that, and I know the

17   Court is conscious of that.  But I would also say that it fully

18   counts against him already -- it is a very significant bump-up

19   under the special offense characteristic.  So it is priced in,

20   to use that analogy again, already in the sentence.

21          And so it is -- it is a difficult thing for us to

22   deal with in sentencing.  But still 205 months, not even

23   getting to the almost five years that the South Dakota judge

24   would have added --

25          THE COURT:  Let me just stop you for one second.  Let

1    me ask the probation officer.  How many months precisely was

2    the bump-up?  I mean, there were two points, and then there

3    were three points that ended up being five as a whole.  And I

4    don't remember how it was all assembled.  But I'm just trying

5    to understand what the number of months was as Mr. Norton makes

6    that argument.  But it was in total five.  It was the

7    obstruction of justice.

8            MR. NORTON:  Right.  There was a -- well, I didn't

9    make a note of it because we didn't object to it.  But it was a

10   bump-up.

11           THE COURT:  That's all right.  You can proceed.  I

12   was just asking her to look.

13           PROBATION OFFICER:  If he did not have those two

14   enhancements, an offense level of 25 and a Category III

15   criminal history puts him at a guideline range of 70 to 87

16   months compared to -- I'm sorry -- yes.  That is just for the

17   offense, not including 924(c).  So that would be 70 to 87

18   months.

19           THE COURT:  Versus --

20           PROBATION OFFICER:  121 to 151.

21           THE COURT:  Okay.

22           MR. NORTON:  So --

23           THE COURT:  I'm sorry.  I know I interrupted your

24   train of thought.  You were -- that was the point you were

25   making, and then you were about to move on.

1          MR. NORTON:  That was the point I was making.  So the

2    last thing that I was going to comment on is, of course,

3    looking at the 3553(a) factors and specifically -- let me see

4    what I've -- in Paragraph 1 -- Paragraph A-1, I think I have

5    addressed those.  Paragraph 2, you have got the A, B, C, D

6    factors.

7          Under A, there I think what that relates to is the

8    seriousness of the offense, promote respect for the law, and so

9    on.

10          THE COURT:  Go slower for the transcript.  All right.

11          MR. NORTON:  It is 3553(a)(2)(A).  It refers to

12    reflecting the seriousness of the offense, promoting respect

13    for the law, providing just punishment for the events -- or the

14    offense is what I mean to say.  I think that is looking at

15    things sort of from society's view.  What does society say is

16    necessary to keep -- to address something?  We can't have this

17    happen, so there needs to be a consequence.  Well, what is an

18    appropriate consequence?

19          Everything I have ever read about federal sentencing

20    is to the effect that if a jury is asked what they expect the

21    sentence will be following the finding of guilt they invariably

22    give a number that is way below what it is actually going to be

23    under the guidelines.

24          In this case, 205 months -- I can't imagine someone

25    who -- you know, an educated, intelligent person with an

1   understanding of the purpose of sentencing thinking that 205

2   months plus another 57 -- that is 22 years -- would be

3   something necessary by society as a consequence for this kind

4   of conduct.

5           Paragraph 3553(a)(2)(B) is a reference to deterrence.

6   Well, deterrence to Mr. Hill.  I suppose it could be to other

7   people similarly situated.

8           THE COURT:  It can be both.

9           MR. NORTON:  Pardon me?

10          THE COURT:  Both.

11          MR. NORTON:  Both, yes.

12          THE COURT:  General and individual deterrence.

13          MR. NORTON:  Of course, first of all, nobody says,

14  well, gee, let's go rob this bank.  Well, first, let's check

15  the guidelines.  So, again, it is a similar kind of subjective

16  evaluation of, okay, we're taking a risk.  We're going to go

17  commit this crime.  We're taking a risk.

18          To the extent that somebody in that situation

19  actually considers what sort of risk are we taking, it is

20  difficult to conceive that anybody would suppose that the risk

21  is going to be anything on the order of 22 years for these two

22  things combined.

23          So I would suggest that under that 3553 factor that

24  the need for deterrence is really actually far overstated by a

25  sentence of 22 years.  And even just the factor -- you know, to

1   me, one of the compelling things about why you lock somebody up

2   would be that, well, at least that one person can't go commit a

3   crime.

4            So what are we looking at with Mr. Hill?  Is it

5   necessary for Mr. Hill to be in prison until he is 50 years old

6   in order to keep him from doing a crime?  I recognize the whole

7   doubling down thing that I have already addressed and it is

8   already priced in.

9            But I submit that it is not.  Mr. Hill, as the Court

10  has had some opportunity of interaction with him, is not a

11  stupid person.  He is actually fairly savvy.  He has applied

12  some of his savviness in the wrong direction, of course.  But

13  this is I think not a person who is a candidate for getting out

14  of prison and going out and committing another crime the next

15  day.

16            THE COURT:  Well, that gets back to what happened

17  here.  He might not be a candidate for it.  But that is what he

18  did here.

19            MR. NORTON:  Right.  I have spoken to the mistake

20  that he made about doubling down.  But really -- and, frankly,

21  if I were having to make this decision, I would count that

22  against him.  And I'm saying it is counted against him.  It is

23  against him in spades already.

24            The question is how much is necessary to accomplish

25  this.  And what I'm saying is I don't think -- I would urge the

1    Court that it is not necessary for him to be in prison until he

2    is 50 to keep him from committing more crimes between now and

3    age 50.  It is just so, so long.

4            Since I'm on 3553(a)(2), I'll go ahead and speak to

5    Subparagraph (D) also because the Court has already talked

6    about the Crohn's disease, has already talked -- has already

7    considered -- and I appreciate the Court's initiating that and

8    delving into it.  And that is certainly appropriate under this

9    factor.

10           It is not an additional factor because we're now

11   considering the concurrent versus consecutive question.  Other

12   than that, whatever amount of time he has to do in prison, it

13   is that much worse because he is also dealing with the Crohn's

14   disease while he is in prison and trying to get medical care

15   through prison.  So the longer it is, the more -- the more

16   difficult that time is for him to serve.

17           Then of the 3553 factors that I think are beyond the

18   ones that I have already mentioned that I think are

19   particularly appropriate to consider is that in 3553(a)(4)(A),

20   Sub 1, Congress is saying here to consider whether or not a

21   guideline sentence is appropriate or a deviation from the

22   guideline sentence.

23           I'm not -- I'm not going to address -- to assure the

24   Court, I'm not going to go back and try to argue the guidelines

25   issues the Court has already addressed.  But I will mention

1   that he has been denied acceptance, which would be two points.

2   And he has got physical restraint plus two points, and he has

3   got obstruction plus two points.  All of those which we argued

4   against.

5           So when you add all those in, you know, there is a

6   mathematical thing that a lot of people don't realize looking

7   at the one page of -- you know, when you pick the sentence and

8   you have got the offense levels down one side and you have got

9   that number of months across the key page in the guidelines, a

10  lot of people don't look at it and follow the mathematical

11  thing that happens there.  The higher you go in the offense

12  levels, the bigger the jump-up is.  When you are down kind of

13  low in the offense levels, you know, an extra offense level

14  just means a few months.  One offense level increase down near

15  the bottom like from, you know, from 39 to 40, let's say, is a

16  huge jump.  It is just -- mathematically that is how it works

17  out and, of course, intentionally by the Sentencing Commission.

18          So here it is armed robbery.  So he is way up there

19  having 84 months tacked on on top.  So I guess I'll leave it at

20  this because I don't want to rehash the guidelines.  I'll say

21  that getting him -- I would urge the Court that even if we

22  weren't looking at the South Dakota sentence a deviation from

23  what the -- downward from what the guidelines say will be

24  appropriate.  So now that we are dealing with the South Dakota

25  sentence and offense and looking at it in its totality, I urge

1    the Court that simply tacking on 57 months consecutive to what

2    the guidelines would say here very much goes too far.

3            The last thing that I would like to speak to, Your

4    Honor, on this question of concurrent -- and it does relate to

5    3553(a)(6) having to do with sentencing disparities -- in this

6    case, I don't recall offhand Mr. Brown's sentence.  He was

7    sentenced after the last time I did an update.  I think his

8    sentence was recently, but I do know that it was significantly

9    less than Mr. Hill's.  And, of course, Mr. Brown had a gun and

10   Mr. Hill didn't.

11           Similarly with Mr. Adeleye, Mr. Adeleye got 192

12   months.  He had a gun.  Mr. Hill didn't.  But Mr. Hill got 205.

13   Now, obviously specific offense characteristics and criminal

14   history categories can be different.  There can be other things

15   going on with the various defendants.

16           THE COURT:  Including whether or not -- I mean, what

17   they were charged with relative to this other event in South

18   Dakota.

19           MR. NORTON:  Well, that is right.  Mr. Shields was

20   charged in South Dakota.

21           THE COURT:  All right.  I don't really want to go

22   through everyone's sentencing.  I'm very conscious of it

23   though.  And I understand it.  But, you know, if there is

24   something major -- a major point you want to make, that is

25   fine.  I don't want to deny you an opportunity to argue.

1              But at the same time I don't need to go through the

2       details.

3              MR. NORTON:  I'll say it in one sentence.  I submit

4       that considering the 3553 with respect to both what he is

5       facing from South Dakota and here -- that if you add those

6       things together, it --

7              THE COURT:  The things together about the other

8       individual -- what the sentences were for the other individuals

9       or -- because that is where I terminated you.  I don't mind any

10      argument you want to make as to the subject matter.  But if

11      we're -- I just didn't want to go through at length what the

12      sentence was for each of these other individuals because I'm

13      very conscious of it.  So I didn't mean to cut you off

14      otherwise.

15             MR. NORTON:  I understand.  And I'm glad because I

16      don't need to do that.  But I was only speaking to disparity

17      and the question of disparities, which is one of the 3553

18      factors.

19             And what I'm saying is that I would contend that

20      there is an improper disparity against Mr. Hill even before

21      thinking about the South Dakota affair.  But once we add that

22      in, if we do it consecutively, it hugely exacerbates the

23      disparity that exists.  And therefore for that reason, along

24      with the others I had mentioned under 3553, running these

25      things concurrent I submit would be the proper outcome.

```
 1              THE COURT:  So the proper outcome for you is to
 2    give -- basically for me to say the sentence should run
 3    completely concurrently?
 4              MR. NORTON:  That is -- I submit in good conscience
 5    that that would be a right and just outcome.  If the Court is
 6    inclined to make some of it consecutive, I would just urge the
 7    Court to make a very small component of it consecutive because
 8    you do have to look at it in its totality.
 9              MR. GHOSE:  Your Honor, there is one concern I have
10    with that proposal.  It is that Mr. Shields got a consecutive
11    sentence.  There was no concurrent sentence imposed upon him.
12    And I think the Court -- one of the factors -- one of the many
13    factors the Court has to consider is how -- as you said you are
14    sensitive to it -- how they are shaking out vis-a-vis one
15    another.
16              That said, it is hard to articulate the reasons why,
17    but 262 months seems harsh.  I don't know what else to say
18    about it.  It seems -- you know, I firmly believe that 205
19    months is absolutely an appropriate sentence for the bank
20    robbery.  And I think that the prosecutor or the judge who is
21    arguing for the 57 months at that time probably did seem
22    appropriate.
23              But when you mush them together, it is getting to
24    be -- I don't know how to articulate it other than to say I get
25    the sense that it is just too long based on five years of being
```

1    a prosecutor and just sort of seeing how things shake out.  You

2    have seen more cases than I have.  You have a better sense of

3    this.

4            But I'm trying to come -- you can't just sort of --

5    you have to somehow have some kind of analysis here.  So my

6    analysis is based on a couple of things.  Mr. Norton mentioned

7    criminal history points and also the three-level increase for

8    committing the offense while on release for another offense.

9            Those punishments are appropriate and particularly

10   the three-level offense level increase for committing a new

11   offense while on federal release for another offense.  That is

12   very severe.  And I think it should be because that is quite

13   egregious conduct.  Mr. Norton is right.  That is one of the

14   things that really -- I felt strong about when advocating for a

15   severe sentence here.

16           The same goes for the criminal history points.  You

17   know, you're punished more if you have higher criminal history

18   points because you are reoffending.  And that is what Mr. Hill

19   is doing.

20           I think both of those two things are appropriate just

21   because of the fact that he reoffended after doing another

22   offense.  The one -- there's two things that I think -- I

23   wouldn't say that there is double counting.  But I was trying

24   to imagine if the bank fraud had occurred in Atlanta and they

25   were charged together.  One thing to think about is that he

1    would get a leader/organizer enhancement, but there would only

2    be one of those enhancements, not two.

3            So he is a leader/organizer.  He was a

4    leader/organizer for the bank fraud.  He was for the bank

5    robbery.  But by chance the fact that they happened in

6    different districts -- in some sense, he's getting a double

7    counting in that regard.

8            The other thing is acceptance.  In this case Mr. Hill

9    cooperated and proffered with agents both from South Dakota and

10   from Atlanta.  And he never got a 5K.  He never testified.  And

11   I don't -- he did get acceptance of responsibility in South

12   Dakota.  He did not get anything here.  He got zero here.

13           And I think the Court's ruling was correct based on

14   the guidelines.  But when you're kind of looking at things at

15   the end of the -- at the end of the thing and you're looking at

16   the sentences together, that is kind of harsh for him as well,

17   the fact that he got zero points for acceptance.

18           He did plead guilty to two levels.  The Court was

19   correct in ruling the way it did.  But I do think it is

20   something to consider because he did proffer early on.  We were

21   able to arrest Kayode Adeleye and Bruce Brown in part because

22   of what he told us.

23           We eventually got DNA evidence, and that would have

24   allowed us to convict them without his continued cooperation.

25   And as you know, he backed out of cooperation and instead went

1    to trial.  But I do think those two things are kind of floating

2    out there as factors you might want to consider as maybe

3    justifications why -- for why some part of this sentence should

4    be run concurrently to the South Dakota sentence.

5           I asked Mr. Norton for a figure if he were to say

6    what is the figure.  And I think he would say something like

7    maybe 36 months.  And that sounds about right to me.  So if you

8    were to say a total sentence, everything jumbled together, of

9    240 months -- so that would be 205 months in this case and then

10   essentially 35 months in the other case, you get to 240 months.

11   That is 20 years.

12          When Mr. Norton talks about him getting out at the

13   age of 50, that is misleading because he has served a lot of

14   time already pending this sentencing.  He is 28 years old.  If

15   he were to get a 20-year sentence, if he were to get three

16   years off for good time on the 85 percent BOP regulations and

17   the time served, he still has a shot at getting out in a decent

18   amount -- with a decent amount of his life remaining.

19          I do think there is some diminishing returns about

20   keeping a prisoner in after a certain point.  And there are so

21   many factors that you have to consider in sentencing.  But I do

22   agree that having looked at everything in the way that it has

23   shaken out that 22 years total seems excessive.

24          And I would say that absolutely some of it should be

25   consecutive.  And you're the best person to determine what that

1   final number should be.  But a 205-month sentence combined with

2   a 35-month sentence consecutive based on the bank fraud conduct

3   resulting in a total sentence of 240 months, 20-year sentence,

4   everything taken together seems -- that seems sensible and fair

5   to me.

6          It would have been 262 if you leave it the way it is.

7   But going down to 205 months, I still firmly -- I understand

8   Mr. Norton's arguments.  But I do believe that if you were to

9   make everything concurrent with one another you are essentially

10  asking Mr. Hill to just pay the money back.  And I don't think

11  that is an appropriate recognition of the harm that occurred in

12  South Dakota.  And the fact that he was punished for committing

13  the offense while on release and he got criminal history points

14  in this case, that punishment is based on his reoffending.  You

15  need something separate for just the fact that he committed

16  bank fraud in South Dakota.

17         And I think if you were to take the 35 months, it is

18  still more than what Shields got.  And if you were to combine

19  that with the lengthy sentence in the bank robbery, I think 240

20  would be a fair outcome.

21         I would like a chance to -- depending on how you

22  rule, Your Honor, I would like a chance to be heard about how

23  you actually have to write the J&C because the cases are a

24  little fuzzy and there's a couple of different ways you can do

25  it.

1           One guideline that is kind of helpful is 5G1.3, which

2     there are some application notes that talks about ways that you

3     can do that.

4           THE COURT:  Okay.  Thank you.

5           MR. NORTON:  Your Honor, could I address two things?

6           THE COURT:  Yes.

7           MR. NORTON:  One is I at least alluded to this a

8     second ago.  This idea of you don't get -- let me see.  You

9     don't need something -- the idea that Mr. Ghose is suggesting

10    is that, well, we need to have something -- we need to have

11    something going towards South Dakota.  It can't be -- it can't

12    be all concurrent because then he is not getting punished for

13    that up there.

14          That is directly opposed to the reason we're back

15    here today.  The principle for why we're back here today is you

16    have got to look at it all together.  And to say, well, he has

17    got to get something on that or else it is a freebie is just

18    false.  That is directly opposite of what the law is.

19          THE COURT:  Well, I understand what your argument is.

20    But I'm -- let me just say it would probably be more helpful

21    for me to hear from you as to a principle basis for running a

22    portion of it concurrent and not because I'm not inclined --

23    and I'll articulate this more.  But just simply I want to say

24    I'm not inclined to just simply say it runs solely

25    consecutively.

1           Yes, there were extra points given for the crime or

2    the offense characteristic of having committed this offense

3    while on bond for South Dakota.  But that is still something

4    different.  And it is something to certainly consider because

5    it was a significant additional part of the sentence.

6           And my view might be a little bit different if I

7    thought, you know, this had been a 10,000-dollar or 5000-dollar

8    escapade in South Dakota.  But it was a serious enough escapade

9    clearly that from what I can see from the plea that there is a

10   sort of intentionality that bothers me about them going forward

11   with the next offense conduct that is still more serious in

12   terms of the potential for force and harm in proceeding with

13   the bank robbery.

14          And I have -- I very much respect Mr. Ghose for being

15   frank about his sort of reaction to the 262 being too harsh.

16   Where the number is is another matter.  And I am very

17   appreciative that he attempted to try to articulate a basis for

18   it.  And I also am very appreciative that you persisted after

19   the judgment was announced.

20          So I mean, everyone has been very professional in the

21   way they have handled this.  And I want to thank each of you

22   for that.  But I am just telling you from my perspective I'm

23   not comfortable with a sentence that is wholly concurrent.

24          So if you have any thoughts about that beyond -- I

25   mean, I'll still credit everything you have said because you've

1    provided a variety of arguments in support of why it should

2    be -- the sentences should be run concurrent.  And I can just

3    simply say, all right, I'm considering that and coming up with

4    a number.

5         But knowing how thoughtful you are as well, if you

6    have any other -- anything else you want to say that would be

7    of help to me, I would be open to that.

8         MR. NORTON:  I don't have something that I can go to

9    the guidelines and point back to a calculation.  I do want to

10   respond to one thing on the numbers that Mr. Ghose said.  And

11   that is, when he came in and was talking about, well, is there

12   something we can move towards agreement on -- we had a very

13   brief discussion before the Court took the bench.  And I do not

14   have any word from Mr. Hill specifically -- you know, I would

15   agree if they would agree to a certain number of months.  We

16   didn't get that far.

17        I threw out the number of 37 because -- sort of for

18   the opposite reason that Mr. Ghose took it.  And that is I was

19   thinking 37 concurrent, not 37 on top of.  And if you did --

20   what I was thinking was 57 minus 37 is 20 months.  So 205 plus

21   20 is 225.  That is what I was actually thinking.

22        Mr. Ghose is -- it was such a brief conversation he

23   is not intentionally misinterpreting.  But I will say also that

24   I was just starting to have a conversation with Mr. Hill about

25   whether or not he would go along with that.  So he has not said

1   yes if he will do that.  I would ask the Court for the same

2   thing.  That is why I have pitched it as I have, Your Honor.

3          THE COURT:  Well, do you desire at all to have 10

4   minutes to talk or 15 minutes to talk?  I'm happy to --

5          MR. GHOSE:  I would argue -- I would just suggest

6   against that because I don't have authority to come to any

7   agreements.  I'm just saying what I think is a fair sentence

8   based on my review.  I can't -- I would have to go find a

9   supervisor to get some kind of formal agreement.

10          MR. NORTON:  And one last thing.  Mr. Hill asked me

11   in advance if he was going to get an opportunity to address the

12   Court.  I said I thought so.

13          THE COURT:  Yes.  I'll certainly allow him to address

14   the Court.  I know that though before he does, Mr. Ghose said

15   you might want to have an opportunity in case -- to speak one

16   last time.

17          MR. GHOSE:  Yeah.  So you have to -- Your Honor, you

18   have to create the judgment and commitment order in this case

19   that makes sense to the Bureau of Prisons.  And it is going to

20   be confusing to them.

21          THE COURT:  I know.  I don't want -- whatever I

22   want -- whatever we do here we don't want it so that Mr. Hill

23   is out there for the next 20 years trying to -- or 15 years

24   trying to get this straight.

25          MR. GHOSE:  Yeah.  I think the judgment and

1  commitment order based on what I read in the cases and in the

2  guideline section I referenced -- I think you have to address

3  the fact that the South Dakota judgment is invalid.  I have

4  never seen a judgment and commitment order do this.  You might

5  even want to cite the legal authority for that conclusion,

6  which is that case which cites the *Setser* case.  And you might

7  even cite the statute as well that is interpreted in the case I

8  mention from the First Circuit and just say the Court in this

9  district is deeming the judgment in the other district to begin

10  running at the time that it was issued.

11          And so one way you can make a portion but not all of

12  it concurrent is to have the judgment in this case start

13  running at a specific date.  So if what we have decided or what

14  the Court has decided is that 22 months should be run

15  concurrent, which is what it would be if you were to agree with

16  my proposal, that, you know, if he's got 57 months and I think

17  he should be getting 35 months really that runs consecutive,

18  then that would mean 22 months would be running concurrent.

19          You could make -- it is complicated, but you could

20  make this judgment here run 22 -- 22 months from the date that

21  that judgment was entered.  That is one way of doing it.

22          The other way to do it is just to say, like I just

23  said, 22 months run concurrently -- what is it -- but 35 months

24  run consecutively.  And then the BOP could do the numbers as

25  far as the dates and things like that.

1          So those would be my two suggestions.  Either say

2   this portion is consecutive, this portion is concurrent, or

3   have this one start running --

4          THE COURT:  Yeah.  I mean, the date has an

5   attraction, but it won't give him -- the problem with a date is

6   then I can't calculate good time on the first sentence.

7          MR. GHOSE:  Right.

8          THE COURT:  And assuming there is good time, it will

9   be 15 percent off.  But I don't -- you know, I don't know what

10  exactly --

11         MR. GHOSE:  That is a good point.

12         THE COURT:  So it would be -- I mean, it doesn't mean

13  we don't have to be extremely particularized.  But I'm just

14  afraid that they are going to do -- I assume but I don't

15  know -- you never know -- the good time calculation separately

16  for each sentence.

17         MR. GHOSE:  That's true.

18         MR. NORTON:  I think they throw it all together.

19         THE COURT:  I know you said before you thought they

20  threw it all together.

21         MR. NORTON:  I think it is that same statute that we

22  have been discussing --

23         THE COURT:  Well, my suggestion is --

24         MR. NORTON:  I mean for good time.

25         THE COURT:  Right.  Where does it say the --

1          MR. NORTON:  Under (c) I think.  3584(c).

2          THE COURT:  Oh, we are back to that.  Okay.

3          Well, I think you're probably right.  But I'm not

4    100 percent sure with the Bureau of Prisons.  It says (c)

5    multiple terms of imprisonment ordered to run consecutively or

6    concurrently shall be treated for administrative purposes as a

7    single aggregate term of imprisonment.  And it would make sense

8    to read it as you have.  But I'm --

9          MR. NORTON:  Anything else would create an impossible

10   chore for the Bureau of Prisons, I think.  And I agree with

11   Mr. Ghose.  It needs to be -- I don't think there is any -- I

12   mean, I think it is pretty clear in the law that this Court can

13   do what it will.  And I certainly wouldn't say that the other

14   judgment is invalid because that could create all kinds of

15   problems.

16         But to say that this Court's judgment runs

17   concurrently to a certain extent with the other ones starting

18   today, I think it accomplishes it.  It is not going to confuse

19   the Bureau of Prisons.

20         MR. GHOSE:  The only response I have is the Bureau of

21   Prisons is going to look at the J&C, not the sentencing

22   transcript.  I feel like there has to be something in the

23   judgment and commitment order so that they -- because they are

24   going to see two competing judgments.  They are going to see

25   this one came after that one.  But --

1          THE COURT:  Well, there is another -- we have the

2    lawyer who is the contact that I was talking to today at the

3    Bureau of Prisons.  And we could do a proposed draft.  I can

4    say what I intend to do and then do a draft that you all get to

5    see and also run it by a lawyer at the Bureau of Prisons to

6    make sure that it is what they are going to be able to decode.

7          MR. NORTON:  That would be fine.

8          THE COURT:  I really don't -- we had like two years

9    ago something that Mary Jane Stewart handled where the

10   defendant for every year -- it was not somebody I had

11   sentenced.  It was years earlier -- had been -- every year

12   would raise an issue about the way the Bureau of Prisons had

13   done it.

14          And thankfully Mary Jane picked it up at some point

15   and looked at it when I became a judge, and it came to me, and

16   somehow it came back to her.  She said, oh, yeah, there is an

17   error here.  So we were able to work it out.

18          But it is not something a normal person you would

19   expect to have basically filed two petitions a year.  I don't

20   want Mr. Hill to be in that position.  So whatever I decide

21   here I think we should -- there should be an agreement that

22   we're going to get it -- have you both look at the J&C, if you

23   are willing to do that, and let me contact the Bureau of

24   Prisons' counsel.

25          MR. NORTON:  Absolutely.

```
1          MR. GHOSE:  Now, does the Judge want --
2          THE COURT:  I'm going to announce it.  It is just
3    simply that -- but I'm going to take five minutes to think
4    about it -- take a five-minute break.  And so that we know what
5    the intent is that we're trying to accomplish.
6          And if I knew for sure about the date and how good
7    time is done, it would facilitate it.  But I'm just not -- even
8    though what you say makes sense, Mr. Norton, I just -- I'm not
9    one thousand percent that is true.
10         All right.  Mr. Hill, do you wish to say anything
11   else?
12         THE DEFENDANT:  Yes.  I wrote a letter maybe a couple
13   of days ago when I knew that I had court so I could address the
14   Court and address you.
15         THE COURT:  Can you just pull the --
16         MR. NORTON:  Why don't you walk up here and talk into
17   the microphone.
18         THE DEFENDANT:  Your Honor, after the letters from me
19   and my loved ones and the support you saw I have and the
20   leniency we asked for, I'm nervous and scared of what to say
21   and how to even express myself today knowing that once again
22   I'm pleading for mercy on my life.
23         Since the last -- since I last was in this courtroom,
24   every day has been a struggle to face as the pain and anguish
25   caused by my actions has torn my family and I apart.  I can't
```

1   speak to my loved ones, especially Paris and my kids, without

2   tears in every conversation.  I left that day as well as my

3   family feeling crushed like I had just got a life sentence.

4           Really, it is only my faith in God that has given me

5   the strength to persevere through this devastation I brought

6   into our lives as a result of my choices I made.  Not a moment

7   passes that I don't think about the mistakes I made wishing I

8   could turn back the hands of time.

9           I really feel ashamed and so much regret.  That's why

10  I had my head down during most of the sentencing.  I just

11  wanted you to know, Your Honor, my heart is pure.  And everyone

12  who knows me will vouch for that.  And no matter wrong or right

13  I always had good intentions.

14          Sometimes when faced with adversities and

15  circumstances, our judgment can become clouded.  As of right

16  now, I have a 22-year sentence.  22 years from now I will be

17  50.  My son will be 30.  And my daughter who I love

18  unconditionally will be 25.  I will be done missed all of their

19  childhood and teenage years.

20          I heard you say to my family I will only have to

21  serve 85 percent with good time.  But you can lose your life in

22  prison.  So you definitely can lose your good time.  That is

23  why I don't count it.

24          I know this case and the South Dakota case are

25  totally different and the judge stated for her sentence to be

1  consecutive.  But at sentencing this case was not yet even

2  imposed nor was the conviction in place.

3       Now that there is one, I ask if there is any way in

4  your power to please consider under the 3553(a) factors to run

5  my sentence concurrent so that I can at least with God's will

6  make it home to see my daughter graduate from high school and

7  try to make it right with my son and my family and the free

8  world before it is too late.

9       THE COURT:  Thank you very much, sir.  All right.

10  We're going to take a -- is there anything else you wanted to

11  say?

12       MR. GHOSE:  No, Your Honor.

13       THE COURT:  We're going to take about a five- or

14  ten-minute break.  I'd like to see the probation officer for a

15  moment.

16       COURTROOM SECURITY OFFICER:  All rise.  Court is in

17  recess.

18       **(A brief break was taken at 3:36 P.M.)**

19       THE COURT:  Please have a seat.

20       MR. GHOSE:  Judge, before you begin, could I just

21  correct one misstatement I had said earlier?  I had said that

22  Mr. Hill had got the role enhancement in this case.  I just

23  checked.  I had sought that.

24       THE COURT:  Right.

25       MR. GHOSE:  He did not receive it though.

1          THE COURT:  Right, he did not receive it.  I

2     appreciate your stating that.  I went back and looked and saw

3     that he had not.

4          And I think that you, Mr. Ghose, did a good job

5     though of still trying to identify any of the areas in the

6     guideline rulings that relate to looking at the entire package

7     because I'm not going back and recalculating those guideline

8     calculations or everything else but really looking at, well,

9     how do I assess what the whole picture looks like.

10          And similarly I think that just in terms of just

11     correcting the record when the probation officer said, well,

12     sort of -- she calculated the difference based on five levels.

13     And that is right if you looked at it as if the obstruction

14     didn't happen at all.  But it did.  So he got three extra

15     guideline point enhancements, which would have made him -- he

16     would have gone down to 87 to 108 if he hadn't gotten that.  He

17     would have also -- at minimum he could have gotten the extra

18     two to three points -- or offense levels if he had gotten

19     acceptance of responsibility.

20          So it is more like it would be five to six or

21     something like that offense levels if you just were looking at

22     those -- a different picture.  But all of those things were, I

23     believe, properly assessed.

24          And at the same time it is -- provides some window of

25     looking at, well, how did the sentence get this high in

1    addition to the 57 months and what is a proper sentence?

2           And as I started out about the South Dakota sentence,

3    it was, well, I don't have all the papers about it.  I have

4    looked at the plea.  I can look at the indictment and some of

5    the papers that are of public record.  And I think that the

6    conduct still has to be separately recognized.  And that is why

7    I was not willing to say the sentence should be wholly

8    concurrent.  Because it wasn't just errant conduct that it

9    was -- that errant criminal conduct that deserves to completely

10   just be swept into this.

11          But I also have to look at the sentence as a whole,

12   and I do look at the sentence as a whole and do consider the

13   parity issues and all of the 3553(a) factors of what is -- that

14   ultimately require me to say what is -- what is sufficient but

15   not greater than what is necessary in order to protect the

16   public and achieve the sentencing purposes.

17          And I discussed this already at great length in the

18   last sentencing, and I don't walk away from any of those

19   findings and reaffirm them here.  At the same time, I too

20   thought that the sentence was very high in total when you added

21   everything together when I look at -- when I am required under

22   the law to look at the sentencing for this individual by

23   himself.  And how does it work?  Does it make sense when I look

24   at the 3553(a) factors as commanded to by the case law for the

25   total sentence in determining what runs consecutive and what

1    runs concurrently.

2          None of us can know what Mr. Hill will be exactly

3    like when he is 40-plus.  But probably the most relevant thing

4    for purposes of protecting the public is for him to be 40-plus,

5    frankly.  And that is what all of the Sentencing Commission and

6    the data shows and that is what social science data shows us

7    that the proclivity to engage in dangerous conduct that is --

8    and repeat conduct -- recidivist conduct is certainly going to

9    lower at that time.

10          And it is a real concern when we have somebody in

11   front of us -- in front of the Court who has engaged in such

12   risky behavior of doing something right after having gotten on

13   bond for a serious set of criminal transactions involving bank

14   fraud that were separate transactions.

15          And as I have said before in the other sentencing

16   that, you know, I can well imagine other ways in which our

17   society would deal with all these issues in terms of making

18   these more productive years at the very least, which I have no

19   notion that they will be.  And I don't know that Mr. Hill will

20   be allowed to participate in a drug treatment program where he

21   gets credit for it.  But I have recommended that, and I'm going

22   to reincorporate all of that.

23          But my sensibility about this is for the reasons

24   that, in fact, Mr. Ghose articulated and somewhat that

25   Mr. Norton articulated, too, that this is too harsh and beyond

1    what is necessary to achieve the purposes of the statute.  And

2    I will run 24 months to run concurrent.  And I can -- which

3    means that pursuant to the Sentencing Reform Act of 1984, it

4    would be the judgment of the Court that the defendant, Ryan

5    Vincent Hill, would be committed to the custody of the Bureau

6    of Prisons for a term of 205 months, which consists of 121

7    months on each of Counts 1 and 2 concurrent with each other and

8    of which 24 months would run concurrent to the judgment in the

9    South Dakota case and 97 months would run consecutive to the

10   South Dakota case.  And then there would be 84 months on

11   Count 3, which would run consecutive to Counts 1 and 2.

12         That is the intent.  Now, how -- you know, how we --

13   whether there is some flaw in the way I have articulated it,

14   first of all, in terms of the intent about the 24 months to run

15   concurrent let me know because I didn't take it off of Count 3

16   in any way or didn't say what that -- I don't think anything

17   can run concurrent as to on Count 3.  That is why I left it as

18   it is because it is supposed to run consecutive to everything

19   else.

20         My original intent was that Mr. Hill would receive

21   credit for all time served, and it really is.  But what I don't

22   know since, Mr. Norton, you say -- maybe the Government says

23   too -- that the sentence in South Dakota was to be run -- your

24   view was that it is already running essentially.

25         MR. NORTON:  That is right.

```
 1          THE COURT:  So I'm trying to understand how that will

 2    work with getting him credit for all time already served on

 3    this sentence, which is what we normally do.

 4          MR. GHOSE:  It is tricky, Your Honor, because he is

 5    our primary custody.  We released him to South Dakota just to

 6    get sentenced and brought him back.  So I would have to talk to

 7    some people.

 8          THE COURT:  All right.  That is a question mark I

 9    want to just put out there.  I mean, the intent normally is --

10    and I don't mean to not -- the intent is to give him credit but

11    at the same time make this -- deal with this legal situation

12    properly and, as Ms. McConochie said to me, it may take a while

13    for us to get this J&C properly done because of these little --

14    I want to just point out that wrinkle though to both of you to

15    think about when -- I'm going to first send you the J&C so we

16    get the best from us.  And then we'll -- then we'll send it

17    over to the Bureau of Prisons to try to figure out any

18    wrinkles.

19          Is it your view that I need to announce the entire --

20    the rest of the judgment completely -- the rest of the judgment

21    that I articulated before?  I'm happy to do so.

22          MR. NORTON:  Your Honor, it is not our view.  If

23    there is some weird rule that says you're supposed to, we would

24    waive it because I understand the intent.  We'll look at the

25    language of the J&C itself.  That is sufficient for us.
```

1          THE COURT:  Because I intended -- I will just say I'm
2    incorporating the rest of the J&C -- the other provisions other
3    than the part that deals with, you know, how to run the
4    sentence and what it is.  The amounts are the same.  It is all
5    just modified as to how it is running.
6          MR. GHOSE:  I would just maybe suggest that since
7    this is the J&C that will go up on appeal that you maybe
8    make -- I think you have already done it to some extent.  But
9    that you incorporate all of the findings that you made
10   previously for the purposes of issuing this judgment.
11         THE COURT:  All right.
12         MR. NORTON:  And I guess I should say that I have
13   done some research in this.  And my view of it is that when it
14   gets -- because a lot of my research was going to be BOP
15   construction of things and working backwards from that.
16         So I think the way -- the proper way to look at it
17   and hopefully the way they will look at it and what I think is
18   the proper legal way is that the judgment has to speak for
19   itself.  And it runs, or it doesn't.
20         So to me the South Dakota judgment is clearly running
21   because it doesn't say otherwise.  And that is the fallback.
22   And since he is in custody, he -- although he has been in
23   pretrial detention on the instant charges, he is -- his
24   sentence has been running.  So wherever he is, his sentence has
25   been running.

```
 1              So my view of it would be that from that date to
 2    this, which is I think something like 12 months maybe, that
 3    that should be time that he has already served on the total
 4    sentence.
 5              THE COURT:  Well, I think it is time served on the
 6    total sentence.  I agree.  And -- but if there is something --
 7    some wrinkle I don't know about this -- the intention is to do
 8    as we always do here:  If the person has been in principal
 9    custody, to give him credit.  I just don't want to in any way
10    run afoul of the South Dakota sentence starting.  But if he has
11    been in principal custody here, I don't think there is going to
12    be a problem.
13              MR. GHOSE:  No, I don't think so, Your Honor.
14              MR. NORTON:  I think the only way it would be a
15    problem is if the BOP made some sort of interpretation that is
16    not what we're expecting.
17              THE COURT:  Well, he has been in custody here since
18    March 21st -- April 21st of 2015 --
19              MR. NORTON:  Correct.
20              THE COURT:  -- when the bond was revoked in the South
21    Dakota case.  So I will just say he should be given credit for
22    all time served since that date.  And we'll see if there is any
23    other wrinkles.  But that is the intent of the Court.  And that
24    is more than two years, so it is important that he obviously
25    get credit for it.
```

1          I adopt the findings articulated before in the

2     preceding sentencing hearing but recognize that I expressly

3     ultimately would not make any findings as to -- and felt I was

4     not in a position to make findings before as to the totality of

5     the sentence that would have included -- understanding how it

6     related to the South Dakota sentence.

7          We have already gone through that.  And so now that

8     I'm looking at the total sentence -- the total amount of time,

9     the two sentences together, which is what I think I'm required

10    to do, I made -- my findings are to some extent modified but

11    not the guideline determinations.

12         They are modified based on the 3553(a) factors of

13    looking at the totality of the sentence and looking at whether

14    it was greater than necessary to achieve the sentencing

15    purposes of the statute and looking at the components of the

16    sentence in that regard.

17         Is there anything else that either of you think we

18    need to do in order to conclude this?

19         MR. NORTON:  Not at this time, Your Honor.

20         THE COURT:  We need to tell Mr. -- again tell

21    Mr. Hill his appeal rights though.

22         Mr. Hill, you would have -- you have the right to

23    appeal the judgment entered in this case.  You have 14 days

24    from the date of the judgment, which I'm not sure when the

25    judgment is going to formally issue.  But it is going to

1   formally issue.  And I'm sure that Mr. Norton will tell you at

2   that time because we're going to try to make sure that it is

3   technically correct in terms of the way it is expressed that

4   you never have problems in getting it properly implemented by

5   the Bureau of Prisons.

6           So the important thing is that you have 14 days.  If

7   Mr. Norton was somehow unavailable or unwilling to pursue an

8   appeal on your behalf, you would have the right to ask me to

9   appoint another attorney for you at no cost to you or you could

10  hire your own attorney at a cost to you.  Or if you end up

11  proceeding alone because you can't find another attorney and

12  you wanted to hire somebody, then you can simply write the

13  Clerk of the Court and say you wish to appeal and would he

14  assist you in filing the notice of appeal on your behalf.

15          But the important thing is just that you have 14 days

16  from the date the actual written judgment is entered in the

17  case.  All right?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Is there anything else?

20          MR. GHOSE:  I was just trying to make sure that the

21  record is as clean as possible, Your Honor.  I just -- it might

22  make sense if the Court recognized that you have the ability to

23  make the entire thing concurrent but that you have elected to

24  do so based on -- only partially based on the 3553(a) factors.

25          THE COURT:  I think I articulated in the beginning

1  that the question that the Court entertained here was to run

2  the sentence completely concurrently, completely consecutively,

3  or in part.

4         MR. NORTON:  That is what we understand, Your Honor.

5         THE COURT:  And that is discussed in 18 U.S.C. 3584

6  as well as in the cases that Mr. Hill brought to the attention

7  of the Court and also that the Government brought to the

8  attention of the Court and we discussed earlier.

9         I was looking at the names of them again.  I'm sorry.

10 I'm looking at my vacated judgment.  The *U.S. vs. Rivas*, the

11 Eleventh Circuit case 15-14074 and the *U.S. vs. Almonte-Reyes*,

12 814 F.3d 24.

13        And I have considered all three options:  Running it

14 consecutively completely, concurrently completely, and in part

15 consecutively and in part concurrent.  And have elected the

16 final option after considering all of the factors under

17 3553(a).

18        Anything else?

19        MR. NORTON:  We would object to the substantive

20 reasonableness of the sentence.

21        THE COURT:  Any objections?

22        MR. GHOSE:  No objection from the Government.

23        THE COURT:  All right.  We'll be touch with you about

24 the formal judgment, and we appreciate it.  Thank you for your

25 cooperation in moving through this.

1              COURTROOM SECURITY OFFICER:  All rise.  Court is in

2    recess.

3                    **(The proceedings were thereby concluded at 4:15**

4                    **P.M.)**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA


    I, SHANNON R. WELCH, RMR, CRR, Official Court Reporter of the United States District Court, for the Northern District of Georgia, Atlanta Division, do hereby certify that the foregoing 47 pages constitute a true transcript of proceedings had before the said Court, held in the City of Atlanta, Georgia, in the matter therein stated.

    In testimony whereof, I hereunto set my hand on this, the 8th day of July, 2017.




_____
SHANNON R. WELCH, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT